IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sherry Johnson, | ) | C/A No.: 3:10-3254-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Thomas Vilsack, Secretary of | ) | |
| Agriculture, United States Department | ) | |
| of Agriculture, | ) | |
| | ) | |
| DefendantS. | ) | |
| | ) | |

Plaintiff Sherry Johnson ("Plaintiff") filed this employment action against Thomas Vilsack, Secretary of the Department of Agriculture and the United States Department of Agriculture ("Defendant" OR "Agency")[1] on December 22, 2010, bringing claims for: (1) race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); (2) sex discrimination under Title VII; (3) age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"); (4) retaliation; and (5) hostile work environment. This matter comes before the court on Defendant's motion for summary judgment filed April 16, 2012. [Entry #27]. Plaintiff filed a timely response [Entry #30], and Defendant filed a reply [Entry #31].

All pretrial proceedings in this case were referred to the undersigned on January 1, 2012 pursuant to the provisions 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this

---

[1] Because the two named defendants are one entity for all practical purposes, the undersigned refers to them as a singular Defendant for ease of reference.

report and recommendation is entered for the district judge's consideration.  For the reasons that follow, the undersigned recommends that Defendant's motion for summary judgment be granted in part and denied in part.

I.    Factual Background

Plaintiff is a 51-year old African-American female, who has been employed by Defendant since 1986. [Entry #30-9 at 3]. Plaintiff began working in Defendant's community programs division in 1994 as a GS-06 technician. *Id*. at 5. Mike Hucks (white male) became Plaintiff's supervisor in 1996. *Id*. at 6. Plaintiff received a promotion in 1997 to a GS-07 technician in the business and industries division. *Id*. at 8. Plaintiff's immediate supervisor was Gregg White (white male) until 1998 when Hucks again became her supervisor. *Id*. at 7–8. In this position, Plaintiff performed technician duties for both the business and industries division and the community programs division, because Hucks was supervising both divisions. *Id*. at 10.  During this time, Plaintiff also performed specialist duties while Specialist Fred Ducey was on medical leave. *Id*. at 12–13.  White again supervised Plaintiff in the business and industries division in 2004 until 2010. *Id*. at 11. Beginning in 2004, Plaintiff, no longer worked for Hucks in the community programs division.

In August 2007, Plaintiff learned that Defendant would be selecting three employees to work as loan technician specialists in (1) the multi-family housing division, supervised by Larry Floyd, (2) the business and industries division, supervised by White, and (3) the community programs division, supervised by Hucks. *Id*. at 19. According to Plaintiff, there was some discussion and disagreement among the program supervisors

and Tee Miller, the State Director, as to what grade level the positions should be announced. *Id*. Miller wanted the three positions announced at the same level because they were all specialist positions. However the program directors could not agree on the appropriate level. *Id*. at 19–20. Hucks and Floyd thought the positions should be announced at a GS-9/11/12[2] level and White insisted that his position be announced as a GS-12. *Id*. In the end, Miller allowed the program directors to announce the jobs at different levels. *Id*. The announcements were open from August 10–23, 2007. [Entry #27–12, #27–13].

Specialist Position in Community Programs Division

The community programs loan specialist announcement was announced as a GS-9/11/12 position. [Entry #27-12]. Plaintiff applied for and was considered along with eight other candidates for the position. Human Resources ("HR") first scored the candidates to determine which candidates were "best qualified" to be submitted to Miller for consideration. [Entry #30-3]. Of the five candidates rated as best qualified, the three African-American candidates received the highest scores. *Id*.; *see also* Entry #30 at 4.

After scoring the candidates, HR gave Miller an alphabetical list of the qualified candidates, which included both Jane Patchin and Plaintiff as qualified for the position at the GS-9 level. [Entry #27-2 at 13–14]. Miller was not given the HR's candidate evaluation score sheet and did not have knowledge of how HR scored the various candidates' paper applications. *Id.* Before making the decision to hire Patchin, Miller

---

[2] The grade that the positions was announced is significant because, pursuant to federal regulations, Plaintiff would be able to move from her grade level of GS-07 to GS-09, but would not be permitted to be promoted from GS-07 to a GS-12.

consulted with Hucks, who was to supervise the selectee. *Id*. at 45. According to Hucks,

he recommended Patchin for the position because she had been working in community

programs for several years as a GS-7 loan technician and had done an outstanding job.

[Entry #27-6 at 3]. Because of her success as a loan technician, he knew that she would

be able to take on the additional responsibilities as a GS-9 loan specialist in the division.

*Id*.

Specialist Position in Business and Industries Division

The specialist position in the business and industries division, within which

Plaintiff was working, was announced as a GS-12 level instead of a GS-9/11/12 like the

positions in the other divisions. [Entry #30-9 at 18–19]. Plaintiff alleges she was shocked

because White had previously told her that she would have an opportunity to apply for

the position. *Id*. at 21. Plaintiff, upon learning how the position would be announced,

asked White why he chose to announce the job as a GS-12 when he had previously told

her that she would have an opportunity to apply. *Id*. at 22. He allegedly told her that he

wanted to hire a young male for the position. *Id*. at 21. Additionally, Plaintiff testified

that she believes White advertised the position as a GS-12 intentionally so that Plaintiff

could not apply because she had made a complaint to the South Carolina Bar (sometime

prior to 2006) about White's brother, Gary White, who had previously served as her

attorney in a matter unrelated to the case at hand. [Entry #30-9 at 11–14]. On August 2,

2007, upon learning that the position would be announced as a GS-12, Plaintiff emailed

Miller about her frustrations and mentioned that she may file a grievance against White.

[Entry #27-14].

4

Plaintiff applied for the business and industries position, even though it was announced as a GS-12, because she believed she was qualified based upon her education and experience. *Id*. at 4–5. However, Plaintiff was not selected for the business and industries position. Shannon Legree, a male employee in his thirties, was selected. *Id*.

On November 23, 2007, after not being selected for either of the specialist positions, Plaintiff contacted an EEO counselor and began the charge process, alleging that she had been discriminated against on the basis of her age, race, and sex. [Entry #30-1]. The Agency issued a Right to File Notice on December 11, 2007, and Plaintiff filed her formal complaint on December 27, 2007. [Entry #30-2]. Plaintiff amended her complaint to include retaliation on March 7, 2008, and her complaint was accepted on October 9, 2008. *Id*. Plaintiff's complaint was investigated by the Agency's EEO department, and a final agency decision was issued on September 27, 2010 and received by Plaintiff on September 30, 2010.[3] On December 22, 2010, Plaintiff brought this action against the Agency alleging race, sex, and age discrimination, retaliation, and racially hostile work environment. [Entry #27-20].

Alleged Retaliation

Plaintiff alleges that after she filed an EEO complaint, White began to retaliate against her by substantially increasing her workload. [Entry #27-3 at 19]. Specifically, Plaintiff alleges that White required her to perform the work of a GS-12 specialist in the

---

[3] Although the portion of the investigation report provided does not have a date (and erroneously lists the dates of investigation as October 27, 2008-January 5, 2008), the parties do not appear to dispute this date. [Entry #27-20].

business and industries[4] division, even though she had not been selected for the specialist position when she applied. *Id*. Plaintiff admits that after she complained, White took these extra responsibilities away, but she stated that she found this humiliating. *Id*. at 19–20. Plaintiff was eventually transferred to a sub-area office, which included increased responsibility. *Id*. at 21–22. However, Plaintiff testified that she now has no regrets about the transfer and that her therapist thought it was a healthy change.  *Id*.

II.    Discussion

    A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non–movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

---

[4] The name of this division appears to have changed throughout the years.  For clarity and consistency, the undersigned refers to it as the business and industries division throughout this Report.

B.      Title VII and ADEA Failure to Promote Framework

To prevail on a disparate treatment claim for failure to promote, a plaintiff must establish that she was treated less favorably because of her race or sex. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (citations omitted). Under the well-established burden-shifting method of proof of *McDonnell-Douglas*, the plaintiff must first set forth a prima facie case of disparate treatment. To prove a prima facie case of discriminatory failure to promote, the plaintiff must prove: (1) she is a member of a protected class; (2) she applied for the position in question; (3) she was qualified for that position; and (4) the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *Id.* The prima facie case standard in a failure to promote context under Title VII is the same under the ADEA. *See Martin v. Alumax of South Carolina, Inc.*, 380 F.Supp.2d 723, 732 (D.S.C. 2005) (citing *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981) (this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

7

C.     Analysis

1.     Community Programs Position/Race Discrimination

Plaintiff alleges that Defendant unlawfully discriminated against her based on race for failure to promote her to the community programs specialty position. [Entry #30 at 8–12]. Defendant concedes that Plaintiff has set forth a prima facie for this claim. [Entry #27-1 at 11].   However, Defendant argues that it has articulated a legitimate non-discriminatory reason for its action, i.e., that Patchin was the best qualified candidate based on her prior work for Hucks in the community programs division and her outstanding performance appraisals. [Entry #27-1 at 11–12].

In support of the argument that Defendant's proffered reason was pretextual, Plaintiff alleges that Patchin had less experience and training than she had. Additionally, Plaintiff notes that three African-American females rated higher than Patchin in the evaluations conducted by HR.  Finally, Plaintiff argues that a comparison of performance appraisals for the years after 2003 were not relevant because Plaintiff and Patchin had different supervisors, and although they were both technicians, they were performing different duties in different divisions. [Entry #30 at 11].

It is undisputed that neither White nor Hucks had knowledge of HR's ratings used to present the five best qualified candidates, or the criteria on which it based these ratings.  [Entry #27-2 at 13–14]. Therefore, neither White nor Hucks had the benefit of these ratings in making the hiring decision.  Additionally, Plaintiff's argument that performance appraisals after 2003 should not have been considered for a promotion in 2007 is unpersuasive.   The evidence shows that Miller received the most recent

8

performance appraisal for each candidate. *Id*. The fact that the candidates had been performing different duties does not show that the decision-maker's consideration of the appraisals was pretextual. Additionally, the fact that Plaintiff and Patchin had been performing different duties bolsters Defendant's proffered reason for hiring Patchin—that she had been performing duties similar to those of the advertised position and had done an outstanding job in that capacity. Plaintiff's remaining argument—that she had 25 years of experience compared with Patchin's 16 years—is insufficient to show pretext in light of Defendant's articulated reason for finding that Patchin was the most qualified candidate. Therefore, the undersigned recommends that Defendant be granted summary judgment on Plaintiff's Title VII race discrimination claim.

2.    Business and Industries Position/Sex and Age Discrimination

Plaintiff alleges that Defendant unlawfully discriminated against her based on race for failure to promote her to the business and industries specialist position. [Entry #30 at 12–18]. Defendant argues that Plaintiff cannot make a prima facie case of discrimination because she cannot show that she was qualified for the GS-12 position due to federal personnel rules prohibiting an employee from promoting from a GS-7, such as Plaintiff, to a GS-12. *See* 5 CFR part 300.604(a) ("Candidates for advancement to a position at GS-12 or above must have completed a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled.").

Plaintiff alleges that White intentionally and unlawfully advertised the position at the GS-12 level to prevent her from applying for it. Defendant argues that Plaintiff did not timely exhaust her administrative remedies for such a claim. Specifically, Defendant

9

argues that Plaintiff did not file an EEO complaint within the 45 days required, as she knew the position would be announced at the GS-12 level by at least August 2, 2007, and even confronted White and Miller about it, but did not file an EEO grievance/complaint about the issue until November 23, 2007.  In response, Plaintiff appears to argue that, although failure to file within 45 days may be grounds for dismissal of the grievance, her grievance was not dismissed and Defendant therefore waived the time limitations.

Federal regulations require that an aggrieved employee contact the EEO office "within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  Here, Plaintiff knew that the position would be advertised as a GS-12 by August 2, 2012, and she sent an email to Miller expressing her disappointment with White's decision and her belief that White had a personal vendetta against her. [Entry #27-14].  The email also indicates that Plaintiff had spoken to White and expressed her disappointment.  *Id.* The position was officially announced by August 10, 2007.  [Entry #27-12].  Therefore, it is undisputed that Plaintiff did not contact the EEO office within 45 days of the effective date of the action.

Although Plaintiff argues that Defendant waived a timeliness defense when it issued a Right To Sue letter, the EEO paperwork indicates that the EEO office did not have knowledge of the date of the alleged discriminatory action, as it was reported as "unspecified." [Entry #30-2]. Plaintiff has not provided any authority in support of her argument that Defendant waived the timeliness argument by acting on Plaintiff's EEO complaint.  Additionally, the record does not contain a full copy of the EEO investigation

10

report, and the undersigned cannot discern whether the EEO office addressed timeliness.

Therefore, the undersigned is constrained to recommend that the district judge find that

Plaintiff did not timely submit an EEO complaint for alleged discrimination regarding the

announcement of the business and industries specialist position at the GS-12 level and

there is no indication, on the record provided, that Defendant waived a timeliness

defense.  *See Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992) (finding that agency

action does not constitute waiver of timeliness in and of itself where the agency has not

made a specific finding that the claimant's submission was timely); *but see, Eneje v.*

*Gonzales*, No. 9:04-1695-SB, 2007 WL 1068176, *7–8 (D.S.C. 2007).  Additionally, the

undersigned also recommends the district judge find that Plaintiff has not shown a prima

facie case for failure to promote because federal regulations indicate that she was not

qualified for the GS-12 position.[5]

      3.     Retaliation

Both Title VII and the ADEA forbid employers from retaliating against their

employees for exercising their rights under the statutes, which are considered "protected

activities." 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d).  "Protected activities fall into

two distinct categories: participation or opposition. . . . An employer may not retaliate

against an employee [for] participating in an ongoing investigation or proceeding . . . nor

---

[5] If the district judge finds that defendant waived its timeliness defense, Plaintiff may
have set forth a claim of discrimination for failure to promote, as she has direct evidence
in the form of White's statement that he wanted to hire a young male for the position.
However, the undersigned is constrained by the record relating to timeliness in making a
recommendation as to Plaintiff's failure to promote claim.  *Murphy v. West*, No. 98–
2308, 1999 WL 64284, *2 (4th Cir. 1999) (Table) ("Timely exhaustion of administrative
remedies is a prerequisite to filing suit in federal court pursuant to Title VII.").

may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

Retaliation cases under Title VII and the ADEA proceed according to the *McDonnell Douglas* framework. First, the plaintiff must make a prima facie case of retaliation by producing evidence that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (analyzing retaliation claims under the ADEA and Title VII simultaneously).

If the plaintiff states a prima facie case, the burden shifts to the defendant to articulate a non-retaliatory reason for its action. *Laughlin*, 149 F.3d at 258. "Once the defendant produces evidence of its legitimate non[retaliatory] reason for the adverse employment action, the presumption of discrimination created by the prima facie case is rebutted and 'drops from the case, and [the plaintiff] bears the ultimate burden of proving that she has been the victim of retaliation." *Id.* (internal citations omitted).

Here, it is undisputed that Plaintiff participated in protected activity when she filed an EEO complaint.  Plaintiff alleges that she suffered an adverse employment action, as White substantially increased her workload and required her to perform duties of GS-12 specialist after she had not been selected for the position. [Entry #27-3 at 19].  To be "materially adverse," the retaliatory act does not have to be a major job-related event such as discipline, termination, or transfer. The standard is an objective one and the

12

materially adverse action must be one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. Santa Fe Ry. v. White,* 548 U.S. 53, 68 (2006) (quotations omitted). The *Burlington* Court found that a reassignment of job duties may constitute a materially adverse action, depending on the circumstances involved. *Id*. at 70–71.

Here, neither party has set forth factual allegations regarding the sort of extra job duties Plaintiff was initially assigned except that they were duties of a specialist. [Entry #27-3 at 19]. Defendant notes that the job duties were eventually taken away from Plaintiff based on her complaints. However, Plaintiff amended her EEO complaint to include reprisal in March 2008, but testified that the job duties were not taken away from her until 2010.[6] *Id*. Additionally, Plaintiff testified that the job duties were only taken away from her for a brief period because she was transferred to a sub-area office shortly afterward and "loaded up with more responsibilities." *Id*. at 20–21. Viewing the facts in the light most favorable to Plaintiff, she has set forth a prima facie case of retaliation.[7] The burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. Defendant has failed to set forth such a reason. Therefore, the undersigned

---

[6] The record contains testimony implying that the increased workload began when Fred Ducey was promoted, thereby requiring all staff in the business and industries division to pitch in to carry the workload. [Entry #27-3 at 107–109]. However, the record presented is devoid of a date indicating when this occurred. The undersigned resolves all factual inferences in favor of the non-moving party, and therefore relies on the date Plaintiff first complained of retaliation.

[7] Defendant does not argue that Plaintiff has failed to show a causal connection between the protected activity and the adverse employment action.

recommends Defendant be denied summary judgment with regard to Plaintiff's retaliation claim.

### 4.    Racially Hostile Work Environment

Defendant argues that Plaintiff's claim of hostile work environment is barred because she failed to exhaust her administrative remedies with regard to this claim. Specifically, Defendant argues that Plaintiff's EEO complaint did not contain allegations of a racially hostile work environment. [Entry #27-19]. Plaintiff's response to summary judgment does not dispute that she failed to exhaust her administrative remedies related to this claim and she therefore appears to have abandoned the claim.

The administrative complaint defines the scope of the subsequent civil suit: it is limited to those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation. The Fourth Circuit has held "[a]n administrative charge of discrimination does not strictly limit a Title VII suit that may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. U.S. Postal Service*, 665 F.2d 482, 491 (4th Cir. 1981). Here, Plaintiff's EEO charge made no claims of a racially-hostile work environment and none were investigated. Therefore, the undersigned recommends Defendant be granted summary judgment on Plaintiff's claim of hostile work environment.

III.     Conclusion

For the foregoing reasons, it is recommended that Defendant's motion for summary judgment [Entry #27] be granted with regard to Plaintiff's claims for race, sex, and age discrimination and claim of hostile work environment (Plaintiff's First, Second, Third, and Fifth Causes of Action, respectively) and be denied with regard to her retaliation claim (Fourth Cause of Action).

IT IS SO RECOMMENDED.

December 10, 2012                              Shiva V. Hodges
Columbia, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).