IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sherry Johnson, | ) | C/A No. 3:10-3254-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Thomas Vilsack, Secretary of Agriculture, | ) | |
| and the United States Department of | ) | |
| Agriculture, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On December 22, 2010, Sherry Johnson ("Plaintiff") filed the within action against the

United States Department of Agriculture ("USDA") and the Secretary of Agriculture, Thomas

Vilsack (collectively "Defendants"). ECF No. 1. Plaintiff asserts claims for race discrimination,

hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e, et seq. ("Title VII"), and discrimination under the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA"). *Id.* On February 28, 2011, Defendants

filed an answer. ECF No. 5. On April 16, 2012, Defendants filed a motion for summary

judgment, ECF No. 27, to which Plaintiff responded on May 17, 2012. ECF No. 30. Defendants

filed a reply on May 24, 2012. ECF No. 31. In accordance with 28 U.S.C. § 636(b) and Local

Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges

for pretrial handling. On December 10, 2012, the Magistrate Judge issued a Report and

Recommendation in which she recommended that Defendants' motion for summary judgment be

granted as to Plaintiff's claims for discrimination and hostile work environment, and denied as to

her claim for retaliation.  ECF No. 33.  Plaintiff filed objections on January 2, 2013.  ECF No. 34.

## I.  FACTUAL BACKGROUND

Plaintiff is a fifty-one year old, African-American female who has been employed by the USDA in its rural development section since 1985.  ECF Nos. 30-9 at 3 & 30-4 at 1.  USDA's rural development section is subdivided into various divisions, several of which are relevant to this case.  Plaintiff began working in the community programs division ("CPD") in 1994 as a loan technician at general schedule[1] ("GS") 6.  *Id.* at 5.  In 1996, Mike Hucks, a Caucasian male, became Plaintiff's supervisor in CPD.  *Id.* at 6.  Plaintiff was promoted to a GS-7 technician position in the business and industries division ("BID") in 1997, where she worked under supervisor Greg White, a Caucasian male.  *Id.* at 8-9.  In 1998, Hucks replaced White as Plaintiff's supervisor in BID.  *Id.*  Although Plaintiff remained a technician in BID, Plaintiff assumed additional technician responsibilities in CPD, which was also under Hucks' supervision at the time.  *Id.* at 10.

In 2002, Fred Ducey, a loan specialist working under Hucks, took an extended medical leave of absence.  *Id.* at 12-13.  During that period, Hucks increased Plaintiff's responsibilities, assigning her loan specialist duties, even though she was a loan technician.  *Id.*  Around the same time, Plaintiff applied for a promotion to a GS-9/11 information technology position, but was not selected.  *Id.* at 25.  Plaintiff was informed that, based on her education and experience, she was ineligible for the position.  *Id.* at 5.  Charles Sparks, USDA's South Carolina state director for rural development at the time, conveyed to Plaintiff that obtaining a college degree would

---

[1] The term "General Schedule" refers to the pay scale within the United States civil service.

2

improve the likelihood of her receiving a promotion.  *Id.* at 27-28.  Thereafter, Plaintiff started

taking classes to obtain a college degree, while continuing to work full-time for USDA.  *Id.* at 5.

In 2004, after a period of reorganization within rural development, White returned as

Plaintiff's supervisor in BID.  *Id.* at 13.  Plaintiff earned a bachelor degree in business

administration and computer science in December 2006.  *Id.* at 2.

In August 2007, Plaintiff learned that Defendants would be selecting three employees for

promotions to work as loan specialists in the following divisions: the multi-family housing

division ("MFHD"), under the supervision of Larry Floyd; BID, under the supervision of White;

and CPD, under the supervision of Hucks.  *Id.* at 19.  Tee Miller, a Caucasian male and USDA's

South Carolina state director for rural development at the time, instructed Floyd, Hucks, and

White (collectively the "Directors") to agree on what would be the GS-levels of the three loan

specialist positions.  *Id.* at 19-20.  After weeks passed without an agreement, Miller decided to

allow the Directors to announce the positions at different GS-levels.  *Id.* at 20.

At a staff meeting around this time, White informed Plaintiff that she would have an

opportunity to apply for the loan specialist position in BID.  *Id.* at 28.  Before the formal

announcement of the positions, Plaintiff learned that Floyd and Hucks had decided to announce

the loan specialist positions within their divisions at GS-9/11/12, meaning the positions could be

filled by applicants at any of the three GS-levels depending on their eligibility.  ECF Nos. 30-9 &

27-13.  Plaintiff also learned that White had decided to announce the BID loan specialist position

at GS-12.  ECF No. 27-12.  Because Plaintiff held a position at GS-7, federal regulations

permitted her to apply for a GS-9 position, but precluded her from applying for a GS-12 position.[2]  ECF Nos. 27-12 & 27-13.

Upon learning of White's decision, Plaintiff approached White to inquire why he had decided to announce the BID loan specialist position at GS-12 when, previously, he had informed Plaintiff that she would have an opportunity to apply for the position.  ECF No. 30-9 at 22.  According to Plaintiff's deposition testimony, White told her that he wanted to hire a young male for the position.  *Id.*  Plaintiff also testified that she attributes White's decision to animosity stemming from the fact that Plaintiff filed a complaint against White's brother with the South Carolina Bar Association, based on representation in an unrelated matter.  *Id.* at 15-16.  On August 2, 2007, Plaintiff e-mailed Miller advising him of her concerns and indicating that she might file a grievance against White.  ECF No. 27-14.  In the e-mail, Plaintiff expressed her belief that White had a "personal vendetta" against her.  *Id.*  USDA formally announced the loan specialist positions on August 10, 2007, and the application deadline was August 23, 2007.  ECF Nos. 27-12 & 27-13.

Plaintiff applied for the BID and CPD loan specialist positions.  ECF No. 27-3 at 4-5.  According to the announcements for those positions:

> Evaluation of eligible candidates to determine the Best Qualified will be accomplished by comparing all qualified candidates' experience, education, training, self-development, awards as they pertain to the job-related knowledges,

---

[2] Federal regulations provide that, "[c]andidates for advancement to a position at GS-12 or above must have completed a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled."  5 C.F.R. § 300.604(a).  The regulations further provide that, "[c]andidates for advancement to a position at GS-6 through GS-11 must have completed a minimum of 52 weeks in positions . . . [n]o more than two grades lower (or equivalent) when the position to be filled is in a line of work properly classified at 2-grade intervals."  *Id.* § 300.604(b).

4

skills and abilities (KSAs) listed under the Evaluation Criteria. A list of Best Qualified candidates will be referred to the selecting official.

*Id.* In the first stage of the application process, Human Resources ("HR") scored the applicants against the positions' evaluation criteria to determine the five best qualified applicants. ECF No. 27-2 at 12-14. In the second stage, HR submitted the names of the five best qualified applicants to Miller, from which names he made a final selection. *Id.* Miller testified in his deposition that he has never seen an HR "score sheet." *Id.* at 13-14. However, he also testified, "I think in every case, when I was selecting official, [an HR official] provided me the scoring of the best qualified and how the criteria and the veterans preference that were applied and that's how I would be presented the applicants." *Id.* at 12.

With respect to the application process for the CPD loan specialist position, HR selected Plaintiff as one of the five best qualified applicants, assigning her a score of thirteen. ECF No. 30-3. The highest scoring of the five best applicants was Shannon Legree, an African-American male, who received a score of sixteen. *Id.* The lowest scoring applicant, Jane Patchin, a Caucasian female, received a score of eleven. *Id.* The two other applicants, whose races are not evident in the record, received scores of twelve and thirteen. *Id.*

According to Hucks, Miller provided him with the names of Patchin, who at the time he supervised in CPD, and Plaintiff, requesting that he recommend one of them for the position. ECF No. 30-11 at 1; ECF No. 27-6 at 3. Miller did not provide Hucks with the women's scores from the HR evaluations. ECF No. 27-6 at 3. Hucks testified in his affidavit that he recommended Patchin based on her outstanding work as a loan technician during the three prior years she served under him and his belief that she would excel as a loan specialist under his

supervision.  ECF No. 27-6 at 3.  Miller followed Hucks' recommendation and selected Patchin.  ECF No. 27-2 at 12.

At the time of her selection, Patchin, who had not obtained a college degree, had been employed by USDA for eighteen years.  ECF No. 30-4.  Plaintiff testified in her deposition that, at an unspecified time, she trained Patchin after her promotion from an assistant to a loan technician position.  ECF No. 30-9 at 18.  Patchin's performance appraisals for the periods ending September 30, 2006 and 2007, rate her performance as "outstanding," the highest possible rating.  ECF No. 27-10 & 11.  The record does not contain Plaintiff's 2007 performance appraisal, but her 2006 appraisal, during which time Plaintiff served in BID under White's supervision, rates her performance as "fully successful," a rating beneath "outstanding."  ECF No. 27-15.

With respect to the BID loan specialist position, Plaintiff submitted an application despite her ineligibility.  ECF No. 39-9 at 18.  Miller selected Legree for the position, who was in his thirties at the time.  *Id.* at 19.  Legree had a rating of "outstanding" for the 2006 performance appraisal period.  ECF No. 27-14.  The record is unclear as to what extent Miller consulted White, then the BID director, before he selected Legree.

On November 23, 2007, after learning that she had not been selected for either of the loan specialist positions, Plaintiff contacted a USDA Equal Employment Opportunity ("EEO") officer to complain that she had been discriminated against on the basis of age, race, and gender.  ECF No. 30-1.  On December 11, 2007, USDA issued a notice of right to file a formal EEO complaint.  *Id.*  Plaintiff filed a formal complaint on December 27, 2007.  ECF No. 30-2.

According to Plaintiff, White increased her workload after she filed her EEO complaint, requiring her to perform the work of a GS-12 loan specialist in BID, despite her not having been selected for the specialist position. ECF No. 30-9 at 26. Plaintiff testified that, in 2010, after complaining to White about her increased workload, White reduced her responsibilities. ECF No. 27-3 at 19-20. *Id.* at 20. The reduced workload was only temporary because, thereafter, Plaintiff was transferred to a sub-area office, where, according to Plaintiff, her responsibilities again increased. ECF No. 30-9 at 13-14. Plaintiff testified that she liked the challenge that came with the transfer, but that she "felt like it was still a retaliation towards [her] because of this suit." *Id.*

On March 7, 2008, Plaintiff amended her EEO complaint to include retaliation. ECF No. 30-2. On September 27, 2010, USDA's Office of Adjudication issued a decision finding no discrimination. ECF No. 36.

## II. STANDARD OF REVIEW

### A. *The Magistrate Judge's Report and Recommendation*

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

7

**B.  *Summary Judgment***

The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R.

CIV. P. 56(a).  The party seeking summary judgment bears the burden of initially coming forward

and demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must

affirmatively demonstrate that there exists a genuine issue of material fact requiring trial.

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  There is no

issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to

return a verdict for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

### III.  DISCUSSION

**A.  *Race Discrimination in Selection for the CPD Loan Specialist Position***

Plaintiff alleges that Defendants discriminated against her on the basis of race in their

decision to select Patchin, rather than her, for the CPD loan specialist position.  Defendants

concede that Plaintiff can make a prima facie showing of race discrimination, but move for

summary judgment on the grounds that Plaintiff has failed to produce sufficient evidence that the

nondiscriminatory reason they proffered for their failure to promote Plaintiff was pretextual.

**1.  *Legal Standard***

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can establish a claim of

discrimination under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Where there is direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework does not apply. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

A plaintiff alleging that she was treated less favorably in promotions because of her race must establish a prima facie case by showing that: "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

A plaintiff who alleges a failure to promote can "prove pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 259 (4th Cir.

9

2006).  In evaluating relative qualifications, the court's analysis must be "based on the criteria that the employer has established as relevant to the position in question." *Id.* The Fourth Circuit has held that when comparing the relative qualifications of two candidates, the plaintiff must make "a strong showing that [her] qualifications are demonstrably superior to the qualifications of the successful employee." *Id.* at 261-62.  Further, where "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Id.* at 261.

Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.' ") (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)).

**2.  *The Magistrate Judge's Report and Recommendation and Plaintiff's Objections***

At the outset, the Magistrate Judge recognized Defendants' concession that Plaintiff has established a prima facie case of race discrimination.  ECF No. 33 at 8.  As such, the Magistrate Judge only addressed whether Plaintiff has produced sufficient evidence to support a finding that the legitimate, nondiscriminatory reason Defendants proffered for their failure to promote Plaintiff to the loan specialist position in CPD was pretextual.  *Id.*  The Magistrate Judge concluded that Defendants' proffered reason for promoting Patchin over Plaintiff, that Patchin was better qualified for the position, was not pretextual.  *Id.* at 9.  The Magistrate Judge

acknowledged that Plaintiff scored higher than Patchin in HR's evaluations. *Id.* at 8. However, the Magistrate Judge did not consider this relevant, noting that neither Hucks nor Miller had the benefit of reviewing the evaluations. *Id.* The Magistrate Judge found that Defendants' decision to hire Patchin over Plaintiff was supported by Patchin's superior performance appraisals, which indicated that she had done an "outstanding" job performing tasks similar to those that would be required of her as a loan specialist in CPD. *Id.* at 9. Finally, the Magistrate Judge observed that Plaintiff's lengthier term of employment with USDA was insufficient by itself to show that Defendants' reason for hiring Patchin was a pretext for discrimination. *Id.* Accordingly, the Magistrate Judge recommended that the court grant Defendants' motion for summary judgment as to Plaintiff's Title VII claim for race discrimination. *Id.*

Plaintiff argues in her objections that she was more qualified for the CPD loan specialist position than Patchin, so that Defendants' reason for promoting Patchin over her was pretextual. ECF No. 34 at 3. First, Plaintiff focuses on how her qualifications for the CPD loan specialist position surpassed Patchin's. *Id.* at 3. Plaintiff points out that she had twenty-two years of experience working for USDA, eleven of which were as a loan technician, compared to Patchin's sixteen years[3], six of which were as a loan technician. *Id.* Plaintiff adds that she is a college graduate, which Patchin is not; that, in HR's evaluation, she had superior knowledge, skills, and abilities to hold the position; and that she worked eight years in CPD, compared to Patchin's three years. *Id.* Second, Plaintiff objects to the Magistrate Judge's finding that HR's evaluations are not relevant to the court's pretext inquiry as they were not considered in selecting Patchin.

---

[3] The court finds that, at the time, Patchin had been employed by USDA for eighteen years. ECF No. 30-4 at 1.

*Id.* at 4. Plaintiff submits that Defendants' disregard of HR's evaluations is evidence that the reason they articulate for selecting Patchin, her superior qualifications, was a pretext for discrimination. *Id.*

**3. *Analysis***

The court concurs with the Magistrate Judge's recommendation. Defendants concede that Plaintiff can establish a prima facie case of race discrimination. In addition, it is undisputed that Defendants proffered reason for selecting Patchin over Plaintiff for the CPD loan specialist position, that Patchin was more qualified, was legitimate and nondiscriminatory. The remaining issue within the *McDonnell Douglas* framework is whether Plaintiff has produced sufficient evidence to support a finding that Defendants' proffered reason was pretextual.

Both parties cite to facts in the record upon which a jury might rely to determine whether Plaintiff or Patchin was more qualified for the loan specialist position, but there is no dispute that both women were qualified to be loan specialists in CPD. Defendants do not deny that Plaintiff had more education, years of employment with USDA, and years working within CPD, nor do they dispute that Plaintiff trained Patchin as a loan technician. Those differences are reflected in HR's evaluations, which show that both Plaintiff and Patchin were among the five best qualified applicants but, nevertheless, assign Plaintiff a higher score. However, Miller based his final decision on the recommendation of Hucks, who served as CPD director at the time. Out of the best qualified applicants, Miller provided Hucks the names of Patchin and Plaintiff. Although the parties appear to agree that neither Hucks nor Miller were privy to HR's scoring of the five best qualified applicants, ECF Nos. 27-1 at 6 & 34 at 6, the court finds Miller's testimony as to

whether he reviewed the scores ambiguous.[4]  By contrast, the record shows that Hucks was not privy to the scores HR assigned to each applicant.  Hucks testified he recommended Patchin because she was working for him at the time and because he believed Patchin had done an outstanding job as a loan technician, and would do an outstanding job as a loan specialist in CPD under his continued supervision.  Patchin's performance appraisals for 2006 and 2007 are corroborative of that reasoning; Plaintiff's performance appraisal for 2006, under a different supervisor, is less impressive.[5]

Although a reasonable jury could conclude that Plaintiff was a strong applicant for the CPD loan specialist position, the court does not find that Plaintiff has produced sufficient evidence that her qualifications were "demonstrably superior" to Patchin's.  Miller was permitted to select any one of the of the best qualified applicants.  For reasons unclear from the record, the final decision came down to a choice between Plaintiff and Patchin.  Miller selected Patchin because she had the endorsement of Hucks, rather than Plaintiff who had scored two points higher than Patchin on HR's evaluations.  While Miller could have placed greater weight on HR's evaluations than he did on Hucks' recommendation and, instead, selected Plaintiff, the evidence shows that Miller had a decision between two closely matched applicants.  The court finds the evidence of Plaintiff's versus Patchin's qualifications to be in equipoise, which is insufficient to support a jury finding that Plaintiff has made a "strong showing" that her

---

[4] On one hand, Miller testified that HR provided him the "scoring," on the other hand, he testified that he has never seen a "score sheet."  ECF No. 12-14.

[5] The record does not contain Plaintiff's 2007 performance appraisal.

13

qualifications were "demonstrably superior" to Patchin's. *Heiko*, 434 F.3d at 259. Therefore, Plaintiff cannot demonstrate pretext.

Even if a reasonable jury could make an objective determination that Patchin was demonstrably more qualified than Plaintiff for the loan specialist position in CPD, the court would not be required to deny summary judgment. *See Reeves*, 530 U.S. at 143. On the ultimate question of whether Plaintiff's evidence is sufficient to support a finding of discrimination, there are a couple of additional considerations that weigh in favor of summary judgment. First, the court finds nothing inherently discriminatory about Miller's decision to defer to Hucks for the selection, as Hucks could have recommended Plaintiff for the position. To defer to the person who would be supervising the loan specialist risked selecting the applicant who had been ranked lowest by HR, but that does not reveal discriminatory intent. Second, the court does not find sufficient evidence to support a finding that Hucks was motivated by racial animus in making his recommendation. As noted above, Hucks testified that he based his recommendation on the personal experience he had of working with Patchin during the years leading up to the announcement of the loan specialist position, and there is no evidence that undermines the credibility of that explanation. Although Patchin may have been at an unfair advantage because she was working under Hucks at the time Miller sought his recommendation, that advantage was unrelated to race. Based on the record in its entirety, the court finds that Plaintiff has not produced sufficient evidence to support a finding of discrimination.

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's Title VII claim for race discrimination.

14

**B.  *Gender and Age Discrimination in Selection for the BID Loan Specialist Position***

Plaintiff alleges that Defendants discriminated against her on the basis of gender and age by announcing the BID loan specialist at GS-12.  Defendants moves for summary judgment on the grounds that Plaintiff failed to timely exhaust her administrative remedies, and that she failed to produce sufficient evidence to support a finding of discrimination.  With respect to the former argument, Plaintiff concedes she did not timely file a complaint with the EEO but submits that Defendants waived their defense of untimely exhaustion of administrative remedies.

**1.  *Legal Standard***

a.  *Waiver of Timeliness Defense*

The Fourth Circuit has not addressed the issue of when an agency can be deemed to have waived the defense of untimely exhaustion of administrative remedies.  Although courts uniformly agree that the acceptance and investigation of an EEO complaint does not by itself result in a waiver of the timeliness defense, *see Ester v. Principi*, 250 F.3d 1068, 1072 n.1 (7th Cir. 2001), at what point thereafter waiver occurs is unsettled.  Some courts have held that the defense is waived if the agency issued a decision on the merits of the EEO complaint without addressing timeliness, *see id.* at 1071-72; *see also Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) ("Although agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint, we have suggested that if they not only accept and investigate a complaint, but also decide it on the merits–all without mentioning timeliness–their failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit.") (citations omitted).  Alternatively, the Ninth Circuit has held that an agency only waives its timeliness defense if the decision is on the merits and the

15

agency finds discrimination. *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) ("The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination."). The Fifth Circuit is the only court to have held that the timeliness defense is not waived unless the agency specifically finds that the plaintiff timely exhausted her administrative remedies. *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992).

In holding that any agency decision on the merits amounts to a waiver of the timeliness defense, the *Ester* court relied on a basic principal of administrative law, which is "that any objections not made before the administrative agency are subsequently waived before the courts." 250 F.3d at 1072. The *Ester* court found no reason to treat differently plaintiff and agency, citing the well-established rule that "demands that administrative agencies fully state the reasons for their action." *Id.* (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The court also explained that, "the values of judicial economy, agency autonomy, accuracy and the need for a well-developed record for review, are all served by requiring objections-even those objection possessed by the agency itself-to be raised in the agency." *Id.*

The court finds the *Ester* court's reasoning persuasive. By requiring the agency to raise the defense of timeliness in the administrative record, a prospective plaintiff is placed on notice of a potentially fatal procedural defect before she makes the decision to file a lawsuit. Such notice is beneficial both for the parties and the court, insofar as it might discourage the filing of procedurally flawed lawsuits. This consideration, coupled with the background principles of administrative law cited in *Ester*, supports the court's holding that whenever an agency issues a

decision on the merits of an EEO complaint without addressing timeliness the agency waives its defense of untimely exhaustion of administrative remedies.

     b. *Gender and Age Discrimination*

The legal standard for a Title VII discrimination claim is set forth above.  The ADEA addresses age related employment issues by making it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ."  29 U.S.C. § 623(a)(1).  The prima facie case standard in a failure to promote context under the ADEA is the same as under Title VII.  *See Martin v. Alumax of S.C., Inc.*, 380 F. Supp.2d 723, 732 (D.S.C. 2005) (citing *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)).  In addition, the *McDonnell Douglas* burden-shifting framework applies to ADEA claims.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

**2.  *The Magistrate Judge's Report and Recommendation and Plaintiff's Objections***

The Magistrate Judge concluded that Plaintiff failed to timely exhaust her administrative remedies with respect to her claims for gender and age discrimination.  ECF No. 33 at 11.  The Magistrate Judge observed that, "federal regulations require that an aggrieved employee contact the EEO office 'within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action.' "  *Id.* at 10 (quoting 29 C.F.R. § 1614.105(a)(1)).  The Magistrate Judge concluded that Plaintiff's November 23, 2007 EEO complaint was untimely, as Plaintiff announced the BID loan specialist on August 10, 2007.  *Id.*  The Magistrate Judge rejected Plaintiff's position that Defendants waived the defense of untimely exhaustion of administrative remedies by acting on Plaintiff's complaint and issuing

a right to sue letter. *Id.* at 10-11. The Magistrate Judge cited *Rowe v. Sullivan*, 967 F.2d 186,

191 (5th Cir. 1992), for the proposition that an "agency action does not constitute waiver of

timeliness in and of itself where the agency has not made a specific finding that the claimant's

submission was timely." *Id.* at 11. Because, at the time the Magistrate Judge wrote, the record

did not contain a complete copy of the EEO investigation, the Magistrate Judge was unable to

discern whether Defendants made a specific finding that Plaintiff's complaint was timely. *Id.* As

a result, the Magistrate Judge found no evidence in the record that Defendants waived their

timeliness defense. *Id.* Finally, the Magistrate Judge found that Plaintiff could not establish a

prima facie case of discrimination under Title VII and the ADEA because federal regulations

rendered her ineligible to be selected for the BID loan specialist position, as it was announced at

GS-12. *Id.* Accordingly, the Magistrate Judge recommended that the court grant Defendants'

motion for summary judgment as to Plaintiff's Title VII claim for gender discrimination and

ADEA claim for age discrimination. *Id.*

      Plaintiff objects to the Magistrate Judge's findings that Defendants did not waive their

defense of timely exhaustion of administrative remedies and that she failed to establish a prima

facie case of gender and age discrimination. ECF No. 34 at 6 & 8. With respect to the first

finding, Plaintiff contends that the Magistrate Judge's reliance on *Sullivan* was misplaced. ECF

No. 34 at 6. Relying, instead, on *Ester v. Principi*, 250 F.3d 1068 (7th Cir. 2001), Plaintiff

contends that, because USDA reached a decision on the merits of her EEO complaint, it should

find that the agency waived its timeliness defense. *Id.* at 8.

      Plaintiff objects to the Magistrate Judge's conclusion that she failed to establish a prima

facie case of gender and age discrimination because federal regulations rendered her ineligible to

apply for the BID loan specialist position.  *Id.* at 8.  Plaintiff asserts that the adverse employment

action was not Defendants' failure to select her for the position but, rather, to announce the

position in a manner that disqualified her from applying.  *Id.*  Plaintiff contends that Defendants

posted three loan specialist positions, each requiring similar knowledge, skills, and experience,

but posted one of those positions at GS-12, instead of at GS-9/11/12, in an effort to disqualify her

from applying and hire a younger, male employee.  *Id.* at 9.  To support the claim, Plaintiff relies

on her own deposition testimony that White communicated to her his interest in selecting a

younger, male employee for the position.  *Id.*  Further, Plaintiff contends that she was more

qualified for the position than Legree, the younger male whom Defendants selected.  *Id.* at 10.

**3.  *Analysis***

    a.  *Waiver of Timeliness Defense*

On September 27, 2010, USDA's Office of Adjudication issued a final agency decision

that found Plaintiff's EEO complaint to be non-meritorious but did not address whether the

complaint was timely.  Relying on *Ester*, the court finds that Defendants waived their timeliness

defense.  Accordingly, Plaintiff's untimely exhaustion of her administrative remedies is not a

basis upon which to grant summary judgment.

    b.  *Gender and Age Discrimination*

Upon careful review of the record, the court agrees with the Magistrate Judge's

conclusion but not her reasoning.  As an initial matter, the court notes that it construes Plaintiff's

claims for age and gender discrimination differently from the Magistrate Judge.  Plaintiff does

not claim that Defendants discriminated against her by failing to select her for the BID loan

specialist position but, rather, by announcing that position at GS-12, which rendered her

ineligible to apply.  To support that claim, Plaintiff's objections suggest she is relying on both indirect and direct evidence to establish discrimination.

### i. *Indirect Evidence*

By virtue of the way Plaintiff has argued her claims for gender and age discrimination, that the adverse employment action was announcing the BID loan specialist position at GS-12, the normal elements of a prima facie case for failure to promote within the *McDonnell Douglas* scheme are not appropriate.  To establish her prima facie case, Plaintiff must show that she was qualified for the position, but her assertion is that Defendants set the qualifications for the BID loan specialist position so as to preclude her from applying.  To analyze that element of the test, the court would need to consider, in the abstract, whether Plaintiff was qualified to be a loan specialist in BID, despite the fact that she lacked the requisite experience to apply for a GS-12 position.  Because the *McDonnell Douglas* scheme is not a helpful construct for determining whether a reasonable jury could find gender and age discrimination in this case, the court does not apply it to those claims.  *See Merrit v. Old Dominion Freight Line, Inc.*, 601 F.3d 289 (4th Cir. 2010) (" 'Courts must . . . resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination vel non.' ") (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)).

Instead, the court considers the record as a whole and inquires whether Plaintiff has produced sufficient evidence to support a finding of discrimination.  Plaintiff relies almost exclusively on the fact that the two other loan specialist position were announced at a lower GS-level, for which Plaintiff was eligible to apply.  Although it is not apparent from the record

why the position in BID was announced at GS-12, this does not by itself evidence discrimination. The fact that the adverse employment action is Defendants' decision to announce the position at GS-12, in and of itself, counsels against finding that the action was motived by Plaintiff's gender or age. To announce the position in such a manner was a gender and age-neutral employment action that precluded all sub-GS-11 employees[6], even younger males, from applying. Implicit in the decision to announce the position at GS-12 is a nondiscriminatory explanation, to hire an individual who had obtained the level of experience that is required of someone eligible to apply for a position at that GS-level. Furthermore, the court does not find that the relative qualifications of Plaintiff and Legree, the younger, male applicant selected for the position, supports an inference of discrimination, as Legree had the experience that Plaintiff lacked to qualify for a GS-12 position. Although Legree required a certain amount of training when he assumed the position of loan specialist, his experience working in a position four GS-levels higher than Plaintiff negates a finding that her qualifications were "demonstrably superior" to his. The court discerns no evidence of discrimination in those facts.

    ii. *Direct Evidence*

    Plaintiff testified in her deposition that White conveyed to her that the reason he decided to announce the BID loan specialist position at GS-12, despite having previously indicated that Plaintiff would be eligible to apply for the position, was because he wanted hire a younger, male employee. ECF No. 30-9 at 22. Although this is direct evidence of discrimination, other portions of Plaintiff's deposition and the record undermine that testimony. In particular, Plaintiff testified in her deposition that she attributed White's decision to animosity stemming from the

---

[6] *See supra* note 1.

fact that Plaintiff reported White's brother to the South Carolina Bar Association for his representation in an unrelated matter. The record also contains a letter that Plaintiff wrote Miller on August 2, 20007, after her conversation with White, in which letter Plaintiff expressed her belief that White's decision was motivated by a "personal vendetta" against her, without mentioning discrimination or White's alleged admission. In light of the discussion in the previous section, Plaintiff's inconsistent and uncorroborated deposition testimony is insufficient by itself to persuade a reasonable jury that the decision to announce the position at GS-12 was motivated by discriminatory animus.

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claims for gender discrimination under Title VII, and age discrimination under the ADEA.

**C.  *Retaliation***

Upon review, the Magistrate Judge concluded that Plaintiff has established a prima facie case of retaliation under Title VII. The Magistrate Judge recognized that the parties agree that Plaintiff participated in a protected activity when she filed an EEO complaint. ECF No. 33 at 12. The Magistrate Judge found that, based on Plaintiff's deposition testimony, a reasonable jury could conclude that Plaintiff suffered an adverse employment action when Defendants increased her workload subsequent to the filing of her EEO complaint. *Id.* at 13. Accordingly, the Magistrate Judge recommended denying Defendants' motion for summary judgment as to Plaintiff's Title VII claim for retaliation. *Id.* at 13-14.

Because Defendants offer no objections to the Magistrate Judge's Report and Recommendation, the court need not conduct a de novo review. *See Mathews v. Weber*, 423 U.S. 261, 270 (1976). Nevertheless, after carefully reviewing the record and the applicable law,

22

the court agrees with the Magistrate Judge's findings.  Therefore, Defendants' motion for summary judgment is denied as to Plaintiff's claim for retaliation under Title VII.

**D.  *Hostile Work Environment***

The Magistrate Judge found that Plaintiff failed to exhaust her administrative remedies because her EEO complaint did not assert a claim for hostile work environment.  The Magistrate Judge noted that Defendants' motion for summary judgment is unopposed as to this claim.  Accordingly, the Magistrate Judge recommended that the court grant Defendants' motion for summary judgment as to Plaintiff's Title VII claim for hostile work environment.

Because Plaintiff offers no objections to the Magistrate Judge's Report and Recommendation, the court need not conduct a de novo review.  Nevertheless, after carefully reviewing the record, the court agrees with the Magistrate Judge's findings.  Therefore, Defendants' motion for summary judgment is granted as to Plaintiff's Title VII claim for hostile work environment.

## IV. CONCLUSION

After careful review of the record, the court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge. Defendants' motion for summary judgment is granted as to Plaintiff's claims for gender and race discrimination under Title VII and age discrimination under the ADEA. Defendants' motion for summary judgment is also granted as to Plaintiff's claim for hostile work environment under Title VII. Defendants' motion for summary judgment is denied as to Plaintiff's Title VII claim for retaliation.

**IT IS SO ORDERED.**

<u>s/ Margaret B. Seymour</u>
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
March 28, 2013

24